Motion for Rehearing Granted; Affirmed; Memorandum Opinion of August 31,
2006 Withdrawn and Majority and Dissenting Opinions on Rehearing filed
September 27, 2007








Motion for Rehearing Granted; Affirmed; Memorandum
Opinion of August 31, 2006 Withdrawn and Majority and Dissenting Opinions on Rehearing filed September 27, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00227-CR

_______________

 

ALEJANDRO V. SANTACRUZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 987,489

                                                                                                                                                

 

D I S S E N T I N G   O P I N I O N   O N   R E H E A
R I N G

 

I disagree with the Majority Opinion=s conclusion that the complainant=s statements on the 911 tape (the Atape@) identifying appellant as her
assailant were nontestimonial.[1]








In Davis, the Supreme Court
described the difference between testimonial statements, that are barred by the
Confrontation Clause, and nontestimonial statements, that are not:

Statements are nontestimonial when
made in the course of police interrogation[[2]]  under
circumstances objectively indicating that the primary purpose of the
interrogation is to enable police assistance to meet an ongoing emergency. 
They are testimonial when the circumstances objectively indicate that there is
no such ongoing emergency, and that the primary purpose of the interrogation is
to establish or prove past events potentially relevant to later criminal
prosecution.

Davis v. Washington, 126 S.Ct. 2266, 2273-74 (2006).

In then illustrating this distinction
by contrasting McCottry=s statements in Davis, that were not testimonial, from
Crawford=s statements in Crawford, that
were testimonial, the Court explained:

[T]he initial interrogation conducted in connection
with a 911 call, is ordinarily not designed primarily to Aestablis[h] or prov[e]@ some past fact, but to describe current circumstances requiring police
assistance.

*          *          *          *








In Davis, McCottry was
speaking about events as they were actually happening, rather than Adescrib[ing] past events,@ Sylvia Crawford's interrogation, on
the other hand, took place hours after the events she described had occurred. 
Moreover, any reasonable listener would recognize that McCottry (unlike Sylvia
Crawford) was facing an ongoing emergency. Although one might call 911
to provide a narrative report of a crime absent any imminent danger, McCottry's
call was plainly a call for help against bona fide physical threat.  Third, the
nature of what was asked and answered in Davis, again viewed
objectively, was such that the elicited statements were necessary to be able to
resolve the present emergency, rather than simply to learn (as in Crawford
) what had happened in the past.  That is true even of the operator's effort to
establish the identity of the assailant, so that the dispatched officers might
know whether they would be encountering a violent felon.  And finally, the
difference in the level of formality between the two interviews is striking.
Crawford was responding calmly, at the station house, to a series of questions,
with the officer-interrogator taping and making notes of her answers;
McCottry's frantic answers were provided over the phone, in an environment that
was not tranquil, or even (as far as any reasonable 911 operator could make
out) safe.

We conclude from all this that the circumstances of
McCottry's interrogation objectively indicate its primary purpose was to enable
police assistance to meet an ongoing emergency.  She simply was not acting as a
witness; she was not testifying.  What she said was not Aa weaker substitute for live testimony@ at trial, like . . . Sylvia Crawford's statement in Crawford. 
In each of those cases, the ex parte actors and the evidentiary products
of the ex parte communication aligned perfectly with their courtroom
analogues.  McCottry's emergency statement does not.  No Awitness@
goes into court to proclaim an emergency and seek help.

*          *          *          *

This is not to say that a
conversation which begins as an interrogation to determine the need for
emergency assistance cannot . . . Aevolve into testimonial statements@ . . . once that purpose has been
achieved.  In this case, for example, after the operator gained the information
needed to address the exigency of the moment, the emergency appears to have
ended (when Davis drove away from the premises).

Id. at 2276-77 (citations omitted).








If the testimonial nature of
statements in a 911 call is to be determined from the viewpoint of the 911
operator, as some portions of the foregoing excerpt could suggest, then the beginning
of every 911 call would necessarily be nontestimonial at least until the extent
and urgency of the emergency, if any, is determined.  However, the opinion also
states that Ait is in the final analysis the declarant=s statements, not the interrogator=s questions, that the Confrontation
Clause requires us to evaluate.@  Id. at 2274 n.1.  Moreover, other portions of the
above Davis excerpt emphasize that: (1) the crucial Confrontation Clause
distinction between testimonial and nontestimonial statements is whether they
were given for the purpose of establishing past facts; and, thus, (2) the
actual existence of a bona fide emergency is essential to assure that the
caller is, in fact, describing current circumstances that require immediate
police assistance so as not to be acting as a witness concerning past facts.

In this case, the 911 call was not
placed from the location where the assault had occurred, or while it was
happening.  Rather, the call was made some ten to fifteen minutes after the
assault from the home of the complainant=s mother, where the complainant had since
taken her children.  Although it is clear that the complainant was injured and
still very upset, there is no indication in the recording[3]
that appellant remained an ongoing threat such as by: (1) having attempted to
prevent the complainant from leaving their home, where the assault had
occurred; (2) having pursued her when she left there; (3) being present at the
home from which the call was made; or (4) even being aware that the complainant
had gone there, such that his identification was needed, as in Davis, to
enable the dispatched officers to know whether they would be encountering a
violent felon when they arrived.  See id. at 2276.  The complainant was
therefore in need of medical attention for a past threat, rather than seeking
help against a present threat or other ongoing emergency requiring police
assistance.  The 911 tape in this case is thus like the portion of the tape in Davis
that had evolved into testimonial statements because Athe emergency appears to have ended
(when Davis drove away from the premises).@








Because the statements on the tape
are testimonial, their admission is constitutional error, which requires
reversal unless we determine beyond a reasonable doubt that it did not
contribute to the judgment.[4]  However,
because the complainant=s statements on the tape provided the only direct evidence of
the aggravating element of the offense, i.e., that appellant had
assaulted her with a deadly weapon, there is no basis to conclude beyond a
reasonable doubt that the error did not contribute to appellant=s conviction.  Therefore, we should sustain
appellant=s second issue, reverse his conviction, and remand the case to the trial
court.

 

 

/s/        Richard H. Edelman

Justice

 

Judgment
rendered and Opinion of August 31, 2006 Withdrawn and Majority and Dissenting
Opinions on Rehearing filed September 27, 2007.

 

Panel consists of Justices Anderson,
Frost, and Edelman.* (Frost, J., majority)

 

Publish C Tex.
R. App. P. 47.2(b).









[1]           Although evidentiary rulings are generally
reviewed for abuse of discretion, we apply a de novo standard of review
when reviewing whether admission of evidence is a Confrontation Clause violation. 
See Wall v. State, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).





[2]           Although this passage refers to police
interrogation, the footnotes in Davis clarify that: (1) this is not to
imply that statements made in the absence of any interrogation are necessarily
nontestimonial; and (2) 911 operators who are not themselves law enforcement
officers may nevertheless be the agents of law enforcement when they
interrogate 911 callers and would be considered as such for purposes of that opinion. 
See Davis v. Washington, 126 S.Ct. 2266, 2274 n.1, 2 (2006).





[3]           Nothing in Davis suggests that the
testimonial or nontestimonial character of a statement in a 911 tape can be
determined in hindsight by reference to events occurring after the 911
conversation takes place, as the Majority attempts to do by reference to the
complainant=s statements to responding officers.  Regardless, it
was appellant who had first left the scene of the assault, and the evidence
relied upon by the Majority suggests, at most, a possibility of a future threat
rather than a likelihood of any immediate threat.  If anything, the complainant=s statement to a responding officer, that it was her
brother-in-law who had struck her with the rifle, and that appellant had struck
her with his fist, underscores the need to not only test the complainant=s credibility with cross-examination, but also to
allow the jury to assess her demeanor in person.





[4]           Tex. R. App. P. 44.2(a); see also Simpson v. State, 119 S.W.3d 262,
269-71 (Tex. Crim. App. 2003) (analyzing a confrontation clause violation under
the constitutional harm framework established in Rule of Appellate Procedure
44.2(a)). 





*           Senior
Justice Richard H. Edelman, sitting by assignment.